Next case is Montanezv.Thompson and we have Montanezv.Thompson. Mr. Saro, good morning. Good morning, Your Honor. May it please the Court, I'm Claudia Tesoro. I'm from the Attorney General's Office here in Philadelphia and I'm going to present the appellant, Pat Thompson. We'd like to reserve three minutes for rebuttal. Yes, that's fine. Ms. Thompson is an employee in the Records Office at the State Correctional Institution at Calbeon and this appeal is from the denial of her claim at summer judgment of qualified immunity. The appeal is in this Court's jurisdiction and should be resolved in Ms. Thompson's favor    Ms. Thompson is an employee at the State Correctional Institution at Calbeon. I'm chuckling because I have that practically verbatim in my notes to ask the same question. I don't think there is a realistic question that the jury could be asked to decide because everything that they would need or that anybody would need, I think it should be the judge not the jury, to determine whether Mr. Montanezv was held beyond his term or not is a matter of historical fact and those historical facts are already known. This is not your paradigm jury question about who threw the first punch or was the light red or green. There's nothing in this scenario overall where the jury would be asked to make a decision about a factual issue that hinges on somebody's perception or somebody's recollection. There isn't a factual question for a jury, there's no factual question for the jury. Mr. Saar, are you familiar with the case of Forbes v. Township of Lower Marion? I take it. Yes. Do you think that the district court in this case gave us as much as we directed the district courts to provide and then decide and qualify the questions to enable us to really decide this issue? Well, I guess the district judge may think that he did. What happened here is you probably understand that. I'm asking you what you think he did. Well, I don't think he did, but I don't think he could because there are no factual issues that he could point to because the pivotal concern is a legal one. And the judge, for whatever reason, he seems to have overlooked or misunderstood that critical basis upon which the entire argument is raised. What is that? That the question of whether Mr. Martinez was held beyond his term, the first element of his underlying Section 1983 claim, is a legal question based on the historical facts. If he was not held beyond his term, then his constitutional rights were not violated and there is nothing further that needs to be discussed. Has the judge pointed to all the historical facts that he needed to arrive at a precise date that this plaintiff should have been released from custody? Yes. Did the Commonwealth point to the facts to say this is what he should have gotten out and it is or is not excessive confinement? Yes. In particular, the declaration of Jennifer Hendricks summarized why the maximum date would have been in May of 2002 rather than February of 2001 or July of 2001 or even December of 2001, which is when he was released from Albany. It seems to me this case could boil down very simply to the question of whether or not Mr. Martinez was held. Well, I don't know if it boils down to that exactly, but it's a fact that he was not repealed. What did the district court say about that in its decision to deny a qualified immunity? At the moment, I don't remember anything other than the fact that the parole board partially rescinded its earlier decision, but I don't think that answers what we're getting at. Yes. And that's very important because the district judge did not seem to grasp the significance of that decision. Mr. Martinez felt that, I should say his attorney at that point felt, that because of that eventual parole board decision, he only had six months of back time and he was kept in prison on his Kenyatta sentence a lot longer than that, and that was unfair. They didn't recognize, even though I do believe it was argued below, that the completion of a period of back time does not ever entitle a person to re-parole, no matter what. Even if Mr. Martinez had never even been charged as a convicted parole violator too, he would not automatically have gotten out of prison after six months, and he was continuing to serve the Kenyatta sentence until it expired because he did not get re-paroled. This case is against a Pat Thompson. Yes. Who is a record keeper. She is an employee in the records office. I believe her title is records specialist. She's not the head of the office, she's just one of the staff. Does she have any authority or power to release Mr. Martinez? No. I mean the Department of Corrections overall has to... Is there an issue of causation here? Are you getting at the idea that anything she may have done or not done isn't what kept him in for the period that he was in? I understand she wrote a letter to the judge who was responsible for awarding or not awarding credit for time spent in custody. Apparently she did. She got a response. I think that's what the record says. No, any letter that she wrote is not in the record, and it's partly got to do, I think, with the fact that this is an older case and certain stuff got purged. But the court documents are certainly there, and that request from Mr. Martinez and her response where she refers to having written a letter to the judge is there. But he was released shortly thereafter, wasn't he? He was. Within five days. He was. But the response... I don't know if it was a response to her letter to the judge, but the only piece of paper I can look at and wonder whether it led to the release is the paperwork from Mr. Durrison of Philadelphia County. Mr. Martinez originally alleged that he got credit according to Mr. Durrison's letter. However, first of all, if you read the entire document, which is not attached to the complaint but is in the same judgment record, Mr. Durrison's paperwork only says he was entitled to credit if it had not already been... if the time had not already been applied on another matter. And it had been for the reasons I was discussing with Judge Fisher a minute ago. What happened when that piece of paper came in that allowed Mr. Martinez to get released a few days after is a mystery to me. And I believe Ms. Hendrick's declaration kind of goes to that because she explains that the release was not commanded then. And any interpretation of the Durrison paperwork to suggest it and to justify releasing this individual is incorrect as a matter of law. But Mr. Martinez, fortunately for him, I guess, did get out of prison in December of 2001 even though technically he had not been paroled and he had not maxed out. So he lucked out on some level as far as we're concerned. Apparently he did. Are you familiar with the case of Sample v. Deeks? Yes. Does that case have any bearing on the issues in this case? The case, especially the aspect of the case that talks about causation and deliberate indifference? I think that Sample establishes the elements of the legal claim that we're working with here. Sounds like it would be important then. It is important. But it's not a qualified immunity decision that was resolved on the first step of the analysis as we're suggesting can be done here. It's terribly important insofar as it established a cause of action for a person who claims to be improperly held in violation of the Eighth Amendment. Can we look at the question whether Mr. Martinez has established a cause of action? Or is that not an issue that has been preserved that we can look at? Well, because this is an appeal from the denial of qualified immunity, I think the way you look at the case has to be looked at that way. You have to look at whether there was a constitutional violation. Yes. But if there's no cause of action under this case that I just mentioned, then there's no constitutional violation. I completely agree with you. In fact, although the emphasis in our papers has been on the first step, whether he was held beyond his term or not, I think that the record also would allow the court to infer that he was not held beyond his term. The case clearly says that for a cause of action involving excessive confinement, there has to be a showing of deliberate indifference, and there has to be a linkage, a causation, between the defendant, who was here, Mrs. Thompson, and the excessive confinement. Yes, that's correct. You agree with that, but were those issues preserved by the Commonwealth? They were part of the original summary judgment motion, yes, and also part of the oral argument on summary judgment as far as causation and deliberate indifference. You're very kind. Thank you. Thanks very much. Mr. Soros. May it please the court, my name is Jared Levin. I'm from the law firm of Harkins Cunningham. I was appointed by this court as the weakest juror on behalf of Athlete Miguel Antanez. Thank you, Mr. Chairman. It's a particular pleasure for me to report this court to you guys. I clerked for this court several years ago and sat in these chairs over here. Now, while it's a particular pleasure for me to report this court, this court does not have jurisdiction here, and we should not be here at all. I think— That depends on whether this was a fact or a matter of law, right? And as you asked that question, I think if you look at the sample case, and we studied that in her brief, that's a third-circuit case that conclusively established that sentencing calculations are factual issues, and I think that this court is bound by that. There are many factual issues that were before the— The same question I put to Ms. DeSoto. In my own experience, I can't conceive of presenting an issue like this to a jury. I think I would get these blank looks from their faces wondering what is it that they're supposed to do. Well, jurors have to make difficult decisions all the time. Very difficult decisions. Including damages calculations. They're not scared of numbers, necessarily. But the idea of determining when somebody gets out of jail, that doesn't sound like a typical jury question. Well, let me give you—at least I have five jury questions that I'll put before the jury. First, you have to look at the impact of the inconsistent calculations provided by the government. Once pre-litigation, including Thompson and Enner's supervisor, who I think is Ms. Hendricks, and now post-litigation, they submitted a directly contrary calculation. That's one thing. The jury would have to determine the impact of these calculations. Secondly, the jury would have to decide how the—the bat time—was the bat time ever submitted? Was that properly accounted for? Third, the jury would have to decide whether Mr. Martinez was given credit for all time that he was incarcerated. And fourth, the jury would have to decide the meaning of the parole board's order that rescinded that recommitment. They indicate, one way or another, how that time that Mr. Martinez was serving should be treated. Is there any reason why all of those determinations cannot be made on the basis of the historical facts, state regulations, and Pennsylvania case law? Well, first of all, before you can get to that point, there's a jurisdictional issue, and I don't think we ever get there. The district has found that there is—that there is a set of facts upon which Mr. Martinez was incarcerated too long. This court can never even get to the question that you just asked. Do we even have enough in front of us to get to that question? I think we do. I think that the jury found, based on its thorough review of the record, remember that the judge, the district court, came up with a third independent calculation. This would require a thorough review of the record. Do you think the court complied with our supervisory rule last year in Forbes v. Montgomery? I, of course, concede that the district court could have done a little more there, but I do think he satisfies Forbes. In Forbes, the district court judge was asked to lay out the facts that are in genuine dispute. He did that here. Mr. Martinez would be stated as a fact that he determined those in genuine dispute, and that's a determination that this court doesn't want jurisdiction over until it's laid out. Which facts weren't in dispute? I believe that he did—I believe that he did satisfy what was asked in the Forbes case. And to require a district court judge, as I'm sure Chief Judge King can attest to that, I think he did do—he did satisfy that standard, yes. Of course, I do concede there's more he could have done. But I think he did lay out the fundamental, the most important one, was the one issue that he found was in dispute, and he laid that out clearly, and why he thought so. Because of the posture of this case, an appeal from the denial of qualified immunity, we don't have the rest of the case, obviously, in front of us. But at the time the qualified immunity motion was made, wasn't that part of a motion for summary judgment? It was a motion for summary judgment, yes. But does the record show whether or not the claim of the lack of a deliberate indifference was decided upon? Because we know the memorandum that the district court prepared after this appeal was filed doesn't touch on that. Again, I believe that that's the merits of the issue. I don't believe that. So that's not before us if your argument's correct that we've got enough jurisdiction. I don't believe that. The district court did say, though, if it is proven that Mr. Ron Hines was incarcerated, that's his maximum date, this is a constitutional violation under Sample v. Moore, and that that constitutional violation was clearly established at that time. Going back to the question they asked Mr. Sura, what if you don't have a cause of action? Whether there's a cause of action... I'm sure you'll argue that you do. I'm looking at the Sample case, which addresses instances of excess confinement, and that case does say that you have to demonstrate deliberate indifference as well as causation. Again, I'm going to preface all this by saying that the court doesn't have jurisdiction to even get to that issue. Now, hypothetically speaking... When we get beyond that, I understand. Whether there was deliberate indifference or causation under the Sample case, it isn't your issue. Now, for example, I believe you raised the point as to whether Thompson actually had the authority to do this. Number one, I think the record shows that she does, although she wants to hide behind the fact that she can't award police estimates of credit, and it's just a certain authority. Did you demonstrate somewhere along the way that there is sufficient evidence to establish deliberate indifference? I believe that the district court found that there was... that if Mr. McIntyre incarcerated past his maximum date, that it did rise to the level of a constitutional violation. It wasn't an alliterative in the district court's opinion. But again, we're here on the threat of qualified immunity at this stage. But the requirement is that Ms. Thompson demonstrate deliberate indifference, and that the cause of the excess confinement was Ms. Pat Thompson and her conduct. And I don't believe those types of issues were ever flushed out below. I think the district court did make a determination on the record they had before them that there was a constitutional violation, and that wasn't what was focused on in the district court by Thompson, and it's not as focused on by Thompson here on appeal. The Commonwealth invites this court to undertake a Saucier v. Katz analysis. Wouldn't it be proper for that to be done before the district court? In other words, if this court finds that there is jurisdiction to review the finding that there are disputed issues of fact, shouldn't the court instruct the district court that this is a legal determination, there are no disputed issues of fact, and direct that the lower court undertake a Saucier v. Katz analysis? Why should this court do it? I believe that if you do get past the jurisdictional issue and you do believe that this is a legal issue or could be a professional issue that could be termed as a matter of law, I think the recourse would always be a remand to what the district court made that calculation in the first instance. But again, I don't believe that we get there based on what is appealed here by Thompson, who believes that the district court made a mistake because she believes that the facts are indisputable. That's just not what the district court judge found here. If we, again, hypothetically speaking, determine that this is an issue of law, then we have to grapple with the qualified immunity issue. Is that correct? That's what's on appeal, denial of qualified immunity. If the argument before the appeal is that the calculation can be completed as a matter of law, as I understand it, if this court was to make that determination, I believe that it should be remanded because that's the issue that's on appeal, whether the facts of the district court had before him make the factual issue responsible or not. Well, if this court finds that it does, I don't think we get there after a remand from the district court to make that determination in the first instance and perhaps more clarify qualified immunity analysis. It sounds like a remand one way or the other. No, I don't think so at all. I think this should be dismissed from our jurisdiction. Okay. But you're going to go back and have the case presented to a jury. The case will go back before the jury. Mr. Durston, another detainee in this matter is Tito. In fact, for trial right now, there's a staying place pending this appeal, and I believe that it should go back to the district court. And at that time, there's a way that this would be done. There's a qualified immunity issue. There's facts and disputes. The special interrogatory could be submitted to the jury. They ask whether Mr. Montaigne has been incarcerated and has his maximum term. At the same time, the lawsuit submitted to the jury could be a verdict liability sheet, which it points out the three-factor testing sample. And based on the jury's decision on the special interrogatory, the district court then makes that determination as to whether the government's entitled to qualified immunity. And if you look at the current waiver's crime decision, too, that's exactly what the district court ended up doing. Well, I think I'll get back to jurisdiction because that's where I find the pressing point here. And I want to point now to Justice Alito on the Forrest case. He said, I believe that's what determines this case here is what Justice Alito has said in Forrest. The rule that this court must abide by is that questions of evidence of deficiency, that is, what factor, pardon the name, may not be able to prove the trial, may not be reviewed by this court, and may not be reviewed by this court. On the other hand, this court has jurisdiction in Long-Term Review to review corrections of law. Here, it was a question of evidence of deficiency that was raised by Thompson. I want to go through what Judge Sanchez had before him when he made his decision because I think it's very important to prove that this is something that his decision, that this is a determination, that there was a trial to show of that. And so then the district court judges would continue their expertise. First, Judge Sanchez had a performance. Mr. Montanez had a convoluted sentencing and parole record. Judge Chino had sentenced Mr. Montanez to two and a half to five years, at which time Mr. Montanez was paroled after serving just two and a half. While he was on parole, he was re-arrested. After parole, he was issued a detainer. He was convicted of sentencing by Judge Duro, a municipal court judge. But then Mr. Montanez appealed that conviction and sentence, and it was subsequently vacated. Thereafter, the parole court brought in Mr. Montanez and ordered him to serve 36 months of parole that time, as it were, so that his conduct would be done on parole. Mr. Montanez began serving at that time, at which time the government re-initiated the charges. Mr. Montanez was put guilty of those charges and he was sentenced by Judge Smith. But then, after the Judge Smith sentencing, 30 of the 36 months of that parole that time was rescinded. That's one instance, one circumstance at the district court I before, that I believe answers the question that there is such ambiguity and uncertainty that it is correct to find that there is a genuine issue of a terror factor trial. The second circumstance is the ambiguity of the sentencing of the parole documents that Judge Sanchez had before him. First, the parole court's decision rescinded a large majority of parole that time. That decision did not indicate one way or another how that period of that time that Mr. Montanez was already serving should be treated. Second, there was the Judge Smith sentence, which did not indicate one way or another whether Judge Smith was warranting pre-sentence credit. Is that one of the bigger problems in computing the appropriate time to serve in this case? Is the Judge Smith not having indicated the amount of credit that he should receive? I believe that's one of the main problems. I think Judge Smith was doing the sentencing. Mr. Montanez was already serving at that time on the cumulative sentence, which was suddenly rescinded. So, you know, I don't know. That's the record Judge Smith had before him. Isn't that easily discernible from the prison records as well as whatever Judge Smith finally indicated as the appropriate credit? I don't think that that's the case. I think given that Mr. Montanez is contrary to the sentencing of the parole officer, I don't think that's possible. In fact, even the government, Thompson and her supervisor, submitted one calculation of pre-relegation, as you point out, which led to Mr. Montanez's release. And now for the purpose of relegation, have submitted the totally directly contrary calculation. But if it's not possible, how are we going to expect the jury to do it? I believe the jury has to make a determination. If there's only one statute that the jury can look to, it's that a prisoner is entitled to credit for all time served. The Judge can do that, couldn't he? I believe that Judge can do it in certain circumstances. For example, if there was a simple enumeration, where a sentencing calculation would have a simple enumeration, and the district court judge argued his discretion before that, what I'm arguing here is that in these particular circumstances, given that Mr. Montanez is contrary to the sentencing of the parole officer, his ambiguous sentencing of both documents and the inconsistent calculations provided by the government, that cannot be determined by the judge. That does become a jury question. I think the sample case specifically says that sentencing calculations are factual issues, and I don't think that this court can get around it. Lastly, I think that even if this court believes that the factual issue could be resolved as a matter of law, I'm aligned with the court that should never be taken up into cremation as to whether the factual issue exists, because there's no jurisdiction to review this issue. Thank you. Thank you very much, Mr. Sherman. I'm going to try to go through things quickly in the order, Mr. Lipp. Let me mention them. Sample does not say that the sentence calculation that was presented here, the sentence calculation question, was a factual issue. The word factual issue is in the opinion, but in an entirely different context, and so it should not, that part of sample should not bind. Mr. Lipp had also argued that there were five questions that a jury could decide, but the questions he identified are legal questions. He pointed out more than once the alleged pre-litigation and post-litigation analyses of Ms. Thompson and Ms. Hendricks, but that, of all things, is not going to undercut qualified immunity. It reinforces it, because it only shows that there was more than one way that you might try to tackle the legal question here. It doesn't change the fact that there's ultimately only one correct answer, but if reasonable people could differ, as allegedly happened, then that in and of itself is a basis for granting qualified immunity. The question of whether the parole board properly accounted for the back time in its decision is a red herring. The parole board doesn't have to do that. It's a statutory matter. Back time is applied in order of the first sentence to be completed, and you don't start serving a new sentence until you finish your back time. The third independent calculation, as it was characterized by the judge in the district court, is also legally incorrect for the reasons we've discussed. I'm asking about the options. If we determine that the issues are factual, of course, it seems like our option is simply to say there's no jurisdiction and we send it back to the district court. Is that right? The issues are factual. If you say it's factual and cannot be resolved as a matter of law, then there would not be jurisdiction, but I don't think that's a correct finding. If we say it's legal, then we can send it back to the district court and ask the district judge to make the determination. Well, I think if it's legal, you should do what you did in... Well, that's another option, which is to address the qualified immunity issue that's on appeal. That's exactly right. If the issue is one of law, the whole point of having an immediate appeal for qualified immunity is to get it resolved, and if it doesn't get resolved correctly... How can we determine that Ms. Thompson should have qualified immunity? Because if Mr. Martinez was not held beyond his term, then... But that's asking us to go ahead and make all those determinations. Right, but that's exactly what happens when this court confronts a situation where the lower court did not correctly identify the legal question. It comes up on appeal, and it's resolved the way that the record justifies and should have been resolved the first time around. There's no need to send this back other than to resolve the lingering claims against Mr. Derrison. I would prefer Judge Sanchez to have the headache. Well, he had it already, and he did, by the way, refer to Saucier in his memorandum. It would require us to go ahead and make those determinations, seriously, on the qualified immunity issue. Is that right? Did I understand you correctly? I think, if I understand what you just said, yes. If it's a question of law, you have jurisdiction, and because it's a question of law, qualified immunity gets resolved because there was no violation of clearly established law. Gotcha. Thank you, Ms. Deschamps. Thank you. Mr. O'Loughlin, you were perceived by both of them in this case, is that correct? Yes, Your Honor. Okay. Thank you very much as well. You did a terrific job. I'm sure the client appreciates your services. Thanks to you. Thanks to Ms. Tesoro also. We will take the case under advisement. The court will be in recess. Thank you.